AVINASH KAR, California Bar No. 240,190
BRENT J. NEWELL, California Bar No. 210,312
LUKE W. COLE, California Bar No. 145,505
Center on Race, Poverty & the Environment
450 Geary Street, Suite 500
San Francisco, CA 94102
(415) 346-4179
(415) 346-8723 fax

CAROLINE FARRELL, California Bar No. 202,871
Center on Race, Poverty & the Environment
1302 Jefferson Street, Suite 2
Delano, CA 93215
(661) 720-9140
(661) 720-9483 fax

Attorneys for Plaintiffs

# IN THE U.S. DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

# FRESNO DIVISION

| | |
|---|---|
| ASSOCIATION OF IRRITATED RESIDENTS, an unincorporated association, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT, FOSTER FARMS, LLC, FOSTER POULTRY FARMS, INC., FOSTER FARMS-EL DORADO RANCH, and FOSTER FARMS-DAVIS RANCH, DOES I-X, | **JURY TRIAL DEMANDED** |
| Defendants. | **(Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*)** |

**INTRODUCTION**

1. This is a case under the federal Clean Air Act to enforce California's regulations to protect the health of San Joaquin Valley residents. The San Joaquin Valley Air District is allowing Foster Farms to expand its chicken factory operations without purchasing required air pollution "offsets" to mitigate the impact of its air pollution emissions on the San Joaquin Valley's already unhealthy air. Under Air District rules, Foster Farms must buy offsets before it can expand; here it has not.

2. Association of Irritated Residents ("AIR") brings this action to enforce the preconstruction requirements in the California State Implementation Plan ("SIP"), pursuant to the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* ("Act"). The San Joaquin Valley Unified Air Pollution Control District ("District") has violated and continues to violate the SIP by issuing permits to Foster Farms, LLC, Foster Poultry Farms, Inc., Foster Farms-El Dorado Ranch, and Foster Farms-Davis Ranch (collectively "Foster Farms") that allow Foster Farms to modify stationary sources without complying with the requirements of San Joaquin Valley Unified Air Pollution Control District Rule ("Rule") 2201. Rule 2201 requires stationary sources that have a post-project Stationary Source Potential to Emit volatile organic compounds ("VOCs") and particulate matter ("PM10") above specified thresholds to install Best Available Control Technology ("BACT") and purchase Emission Reduction Credits ("offsets") prior to construction. Foster Farms' El Dorado Ranch and Davis Ranch facilities exceed these thresholds. The District has thus violated and continues to violate the SIP by issuing permits that fail to require Foster Farms to purchase offsets for these chicken facilities. Likewise, Foster Farms has violated and continues to violate the SIP by failing to purchase offsets for its El Dorado Ranch and Davis Ranch facilities. Furthermore, the District has violated Rule 2201 by not requiring BACT in the permits issued to Foster Farms.

3. Members of AIR live in the San Joaquin Valley air basin and are directly and negatively affected by the violations. AIR seeks a temporary restraining order, a preliminary injunction, a permanent injunction, declaratory relief, civil penalties, environmental remediation, attorneys fees, and costs of litigation to remedy Foster Farms' and the District's violations of the

Clean Air Act. Without an order from this Court requiring compliance with the Clean Air Act, Foster Farms will emit significant, unabated quantities of smog-forming VOC and of PM10, contribute to the San Joaquin Valley's smog-and-PM10-caused public health crisis, irreparably harm AIR members, and place other law-abiding poultry operations at a competitive disadvantage.

4. The San Joaquin Valley has a significant smog (low-level ozone) pollution problem. Over the last five years, the Valley violated the eight-hour ozone National Ambient Air Quality Standard ("NAAQS") on more days than any other air basin in the United States. The American Lung Association's STATE OF THE AIR: 2006 report, released in April 2006, found that Bakersfield, Visalia, Fresno, and Merced are the 1st, 3rd, 4th, and 5th most smog-polluted cities in the nation. The report also found that the San Joaquin Valley counties of Kern, Tulare, Fresno, and Merced are the 1st, 4th, 6th, and 7th most ozone-polluted counties in the United States, respectively.

5. A photochemical reaction between VOC and oxides of nitrogen forms ozone. Ozone pollution damages lung tissue, exacerbates and causes asthma, reduces lung capacity, increases respiratory and cardiovascular hospital admissions and increases school and work absenteeism. Recent research shows that short-term exposure to ozone can result in premature death.

6. A document prepared jointly by the California Air Resources Board ("CARB") and the American Lung Association describes ozone as

> a powerful oxidant that can damage the respiratory tract, causing inflammation and irritation, and induces symptoms such as coughing, chest tightness, shortness of breath, and worsening of asthma symptoms. Ozone in sufficient doses increases the permeability of lung cells, rendering them more susceptible to toxins and microorganisms. The greatest risk is to those who are more active outdoors during smoggy periods, such as children, athletes, and outdoor workers. Exposure to levels of ozone above the current ambient air quality standard leads to lung inflammation and lung tissue damage, and a reduction in the amount of air inhaled into the lungs. Recent evidence has, for the first time, linked the onset of asthma to exposure of elevated ozone levels in exercising children (McConnell 2002). These levels of ozone also reduce crop and timber yields, damage native plants, and damage materials such as rubber, paints, fabric, and plastics.

The California Air Resources Board and the American Lung Association of California, RECENT

COMPLAINT - AIR v. FOSTER FARMS                 2

1  RESEARCH FINDINGS: HEALTH EFFECTS OF PARTICULATE MATTER AND OZONE
2  AIR POLLUTION, January 2004 at 2.

3   7.   PM10 pollution is also a serious health issue in the San Joaquin Valley Air Basin.
Particulate matter is a complex group of air pollutants that vary in size and composition. PM10 comprises particles with an aerodynamic diameter less than or equal to 10 microns. The particulate matter mixture of fine airborne solid particles and liquid droplets (aerosols) is made up of various chemicals, metals, soot, soil, and dust. Some of the aerosols are formed in the atmosphere from components such as volatile organic compounds (VOCs), oxides of sulfur (SOx), ammonia, and nitrogen oxides (NOx). A significant portion of PM10 is generated from human activity, including agricultural operations.

8.   Short-term and long-term exposure to PM10 causes serious health problems. Those at risk for suffering harmful health effects from exposures to particulate matter include the elderly, children, and people with heart and lung diseases, such as asthma, bronchitis, emphysema and pneumonia. A study by CARB titled CHILDREN'S HEALTH STUDY showed that in communities highly polluted with PM10, children's lungs developed more slowly and did not move air as efficiently as children's lungs in clean air communities.

9.   Foster Farms emits VOC and PM10 from its facilities at Davis Ranch and El Dorado Ranch.

10.  Foster Farms has violated and continues to violate Rule 2201 by failing to purchase "offsets" or "emission reduction credits" for VOC emissions and PM10 emissions. The District has violated and continues to violate Rule 2201 by failing to require Foster Farms to purchase offsets. Rule 2201 has been approved by the U.S. Environmental Protection Agency ("EPA") as part of the State Implementation Plan. Pursuant to § 304(a)(1) of the Clean Air Act, 42 U.S.C. § 7604(a)(1), AIR may enforce the State Implementation Plan.

11.  The District has violated and continues to violate Rule 2201 by not requiring BACT in the Authority to Construct ("ATC") permits issued to Foster Farms. The District's BACT determination relied on a cost effectiveness threshold that CARB determined is inadequate.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 7604(a) (the citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question jurisdiction).

13. On August 8, 2006, AIR sent a 60-day notice of intent to sue the District to enforce the State Implementation Plan pursuant to § 304(a)(1) of the Act, 42 U.S.C. § 7604(a)(1). A copy of the notice letter, sent by certified mail, return receipt requested, is attached as Exhibit 1. On September 1, 2006, AIR sent a 60-day notice of intent to sue Foster Farms to enforce the State Implementation Plan pursuant to § 304(a)(1) of the Act, 42 U.S.C. § 7604(a)(1). A copy of the notice letter, sent by certified mail, return receipt requested, is attached as Exhibit 2. AIR also sent the notice letter to the United State Environmental Protection Agency and to the State of California, as required by § 304. AIR has thus met the notice requirements of § 304(a)(1) of the Act, 42 U.S.C. § 7604(a)(1).

14. The relief AIR requests is authorized by 28 U.S.C. §§ 2201(a) and 2202, and 42 U.S.C. § 7604.

15. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this is an action brought under federal law and the events giving rise to the claims in this citizen suit occurred in Fresno County. Assignment to the Fresno Division of this Court is proper under Civil Local Rule 3-120(b) because the claims in this citizen suit occurred in Fresno County.

**PARTIES**

16. Plaintiff ASSOCIATION OF IRRITATED RESIDENTS is an unincorporated association that advocates for air quality and environmental health in the San Joaquin Valley. AIR members reside in Kern, Tulare, Fresno, and Stanislaus counties.

17. AIR is a "person" within the meaning of section 302(e) of the Act, 42 U.S.C. § 7602(e), and may commence a civil action under section 304(a) of the Act, 42 U.S.C. § 7604(a).

18. AIR members live, raise their families, work, teach, recreate, own property, raise crops, and breathe in the San Joaquin Valley Air Basin, specifically in Tulare, Kern, Fresno, and Stanislaus counties. AIR members live in the San Joaquin Valley air basin. VOC emissions from the Foster Farms facilities react with oxides of nitrogen to form smog. Smog levels that

COMPLAINT - AIR v. FOSTER FARMS               4

exceed the eight-hour National Ambient Air Quality Standards for ground-level ozone adversely affect AIR members. These adverse effects include lung damage, exacerbated respiratory disease, and perceived threats to their health, the health of their children, neighbors, and students. AIR members' aesthetic enjoyment of the environment in the San Joaquin Valley and Sierra Nevada Mountains is also harmed by smoggy skies which diminish visibility.

19. Moreover, PM10 emissions from Foster Farms' operations contribute to the Valley's notorious PM10 pollution problem. PM10 levels in the Valley exceed the California Ambient Air Quality Standards and adversely affect AIR members. Increases in PM10 lead to higher rates of hospitalizations, emergency room visits, doctor's visits for respiratory illnesses or heart disease, and increased symptoms of both asthma and bronchitis. High PM10 levels are associated with reduced lung function. In communities highly polluted with PM10, children's lungs develop more slowly and do not move air as efficiently as children's lungs in clean air communities.

20. Foster Farms' and the District's on-going violations of the Clean Air Act have injured and continue to injure AIR members. The relief requested in this lawsuit would remedy members' injuries by imposing civil penalties to deter future violations, by preventing emissions of smog-forming VOC and of PM10 through the installation of appropriate pollution control technology and by reducing VOC and PM10 emissions in the air basin through the purchase of emission reduction credits, thus improving air quality in the San Joaquin Valley Air Basin.

21. Based on information and belief, Foster Farms is the owner and operator of El Dorado Ranch and Davis Ranch. Foster Farms, LLC, Foster Poultry Farms, Inc., Foster Farms-El Dorado Ranch, Foster Farms-Davis Ranch are all "persons" within the meaning of the Act.

22. El Dorado Ranch is located in Fresno County, California, at 1324 South El Dorado Ave., Tranquility, CA.

23. Davis Ranch is located in Fresno County, California, at 8365 East Davis Ave., Laton, CA.

24. Pursuant to section 302(e) of the Act, 42 U.S.C. § 7602(e), Foster Farms is a

COMPLAINT - AIR v. FOSTER FARMS                5

1  "person" against whom AIR may bring a civil action under section 304(a) of the Act, 42 U.S.C. § 7604(a).

25. Pursuant to section 302(e) of the Act, 42 U.S.C. § 7602(e), the District is a "person" against whom AIR may bring a civil action under section 304(a) of the Act, 42 U.S.C. § 7604(a).

26. The true names and capacities of Defendants Does I-X are unknown to AIR at this time. Each Doe is known to AIR only as those who planned to or did operate, construct, alter, or replace the El Dorado Ranch and Davis Ranch stationary sources. AIR believes that information obtained in discovery will lead to the identification of each Defendant's true name, and at that time, AIR will amend this Complaint to reflect the real identity of Defendant Does.

**FACTS**

27. The general purpose of the Clean Air Act, as adopted in 1970 and amended in 1977 and 1990, is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

28. To further this purpose, the Act requires the U.S. Environmental Protection Agency ("EPA") to set National Ambient Air Quality Standards for certain air pollutants, including ozone and PM10, that threaten public health and welfare. 42 U.S.C. § 7409.

29. The EPA has established NAAQS for seven "criteria pollutants," including ozone. 40 C.F.R. part 50.

30. The EPA set the eight-hour NAAQS for ozone at 0.08 parts per million by volume, measured over the daily maximum eight-hour average, a level sufficient to protect human health with an adequate margin of safety. 40 C.F.R. § 50.10. An area complies with the eight-hour ozone standard at an ambient air quality monitoring site in the area when the average of the annual fourth-highest daily maximum eight-hour average ozone concentration is less than or equal to 0.08 parts per million. *Id.*

31. Under section 107(d) of the Act, 42 U.S.C. § 7407(d), each state must designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified because of insufficient data.

An area that meets the NAAQS for a particular criteria pollutant is an "attainment" area for that pollutant. An area that does not meet the NAAQS for a particular criteria pollutant is designated a "nonattainment" area for that pollutant. An area that cannot be classified for a particular criteria pollutant is "unclassifiable" for that pollutant.

32. The Clean Air Act divides ozone nonattainment areas into "marginal," "moderate," "serious," "severe," and "extreme" based on the severity of the ozone pollution problem. 42 U.S.C. § 7511.

33. The San Joaquin Valley Air Basin includes all of San Joaquin, Stanislaus, Merced, Madera, Fresno, Kings, Tulare, and the valley portions of Kern County, as defined by San Joaquin Valley Unified Air Pollution Control District Rule 1020 § 3.44.

34. On April 15, 2004, EPA designated the San Joaquin Valley Air Basin as a serious nonattainment area for the eight-hour ozone NAAQS.

35. The Clean Air Act, as amended in 1990, requires states with nonattainment areas to adopt implementation plans to achieve the National Ambient Air Quality Standards by the applicable attainment dates under the Act. 42 U.S.C. § 7410. The collection of plans and rules designed to attain the various NAAQS are referred to collectively as the State Implementation Plan ("SIP").

36. The Clean Air Act requires that a SIP "shall require permits for the construction and operation of new or modified major stationary sources anywhere in the nonattainment area." 42 U.S.C. § 7502(c)(5). This pre-construction permit program is called "New Source Review" or "NSR."

37. California's SIP provisions must satisfy the requirements of the Act before EPA can approve the state's submission as part of the SIP. 42 U.S.C. § 7410(k); 40 C.F.R. § 51.165.

38. The District adopted Rule 2201 to implement the New Source Review program on September 19, 1991. The version of Rule 2201 approved as part of the SIP was adopted on December 19, 2002. Rule 2201 requires a new or modified stationary source of air pollution or emission unit to install Best Available Control Technology when the source's potential to emit VOC or PM10 exceeds two pounds per day. Rule 2201 § 4.1. Rule 2201 requires a new or

modified stationary source of pollution to purchase "offsets" or "emission reduction credits" for VOC when the source's potential to emit exceeds 20,000 pounds or 10 tons per year and for PM10 when the source's potential to emit exceeds 29,200 pounds or 14.6 tons per year. Rule 2201, § 4.5. EPA approved Rule 2201 as part of the State Implementation Plan. 69 Fed. Reg. 27837 (May 17, 2004); 40 C.F.R. § 52.220(c)(311)(i)(B).

39. The District Rules, including Rule 2201, are an emission standard or limitation as defined in 42 U.S.C. §§ 7602(k), 7604(f).

40. Until December 19, 2002, Rule 2020 § 4.1 exempted "agricultural equipment" from Rule 2201. EPA disapproved that portion of Rule 2020 on July 19, 2001. 66 Fed. Reg. 37587 (July 19, 2001). The District amended Rule 2020 on December 19, 2002 to remove the exemption. EPA approved the amendment as part of the State Implementation Plan. 69 Fed. Reg. 27837 (May 17, 2004).

41. Former California Health & Safety Code § 42310(e) exempted "any equipment used in agricultural operations in the growing of crops or the raising of fowl or animals" from the obligation to obtain a permit. Health & Safety Code § 42310(e) (2003).

42. On June 25, 2003, EPA published a final rule finding that the California SIP was substantially inadequate because former Health & Safety Code § 42310(e) "exempts major agricultural stationary sources from [NSR permit requirements]." 68 Fed. Reg 37746, 37747 (June 25, 2003) (final rule). "As a result, the State and districts cannot issue permits to these agricultural sources, even if they are major stationary sources under the Act. The [Clean Air Act] NSR and [Prevention of Significant Deterioration] permitting requirements do not provide for this exemption." *Id*.

43. On January 1, 2004, the law known as California Senate Bill 700 (Florez) took effect, removing the agricultural exemption from Health & Safety Code § 42310(e), thus allowing the state and districts to issue permits to agricultural sources.

44. The federal Clean Air Act has *never* exempted agricultural stationary sources from the obligation to comply with any provision of the Act.

45. On January 1, 2006, the District found that the El Dorado Ranch Authority to

1 Construct application was complete. The District approved the ATC permit for the
2 modifications to El Dorado Ranch on May 30, 2006. The El Dorado Ranch permit allows the
3 facility to expand by constructing 12 new mechanically-ventilated broiler houses that will house
4 397,440 meat chickens and one diesel-fired emergency internal combustion engine. Prior to the
5 approval of the permit, El Dorado Ranch was a stationary source housing 48 broiler houses and
6 1,280,000 meat chickens. After the approved modifications, the facility's total capacity will be
7 60 broiler houses housing 1,677,440 meat chickens.

8     46. The Davis Ranch ATC application was completed on January 1, 2006. The District
9 approved the ATC permit for the modifications to Davis Ranch on May 30, 2006. The Davis
10 Ranch permit allows the facility to expand by constructing 24 new mechanically-ventilated
11 broiler houses to house 794,880 meat chickens and one diesel-fired emergency internal
12 combustion engine. Prior to the approval of the permit, El Dorado Ranch was a stationary source
13 housing 24 broiler houses and 640,000 meat chickens. After the approved modifications, the
14 facility's total capacity will amount to 48 broiler houses housing 1,434,880 meat chickens.

15     47. At each ranch, each broiler house operates independently and has separate exhaust
16 ventilation; each house is a distinct emission unit. Each of the proposed new broiler houses will
17 have a potential to emit 2.3 pounds per day of VOC.

18     48. Since the emissions of VOC are above the threshold triggering BACT, the District
19 has required Foster Farms to install BACT at El Dorado Ranch and Davis Ranch.

20     49. The District initially proposed seven control technologies to reduce VOC that were
21 all technologically feasible. However, the District then excluded four of these control
22 technologies from its BACT analysis for the El Dorado Ranch and Davis Ranch facilities because
23 the cost per ton of VOC reduced was above the District's threshold for "cost effectiveness."

24     50. The District proposed thermal incineration, catalytic incineration, carbon
25 adsorption, and biofiltration as four of the seven proposed control efficiencies. These
26 technologies had the greatest control efficiency and were all technologically feasible, but the
27 District rejected them for not being cost effective. Thermal incineration has a control efficiency
28 of 98% and catalytic incineration has a control efficiency of 95% and each technology has a cost

1  of $17,180 per ton of VOC reduced.  Carbon adsorption has a control efficiency of 95% and has
2  a cost of $10,000 per ton of VOC reduced.  Biofiltration has a control efficiency of 80% and a
3  cost of $16, 870 per ton of VOC reduced.  The only control technologies that the District
4  accepted as BACT – acidifying litter amendments and feeding animals in accordance with
5  National Research Council guidelines – had control efficiencies of 15% and 5%, respectively.

6   51.  The threshold for cost effectiveness for the San Joaquin Valley Air District is
7  $5,000 per ton of VOC reduced.  The South Coast Air Quality Management District's cost
8  effectiveness threshold is $20,204 per ton of VOC reduced, the Bay Area Air Quality
9  Management District's threshold is $17,500 per ton of VOC reduced, and the Ventura County
10 Air Pollution Control District's threshold is $18,000 per ton of VOC reduced.

11   52.  In 2005, the CARB found that the District's cost effectiveness threshold was too
12 low.  CARB's report also stated that the District's BACT policy does not always promote the use
13 of state-of-the-art control technologies. CARB stated that the District's BACT cost effectiveness
14 thresholds for ozone precursors have not been revised since 1989 and they are significantly lower
15 than other air districts within California. CARB required that the District review and update its
16 BACT determinations so that they more accurately reflect cost effectiveness thresholds used by
17 other districts with similar air quality status, such as the Bay Area, South Coast, Ventura
18 Districts.

19  53.  Foster Farms began actual construction at El Dorado Ranch and Davis Ranch on or
20 after May 30, 2006, when the District issued the permits.  Foster Farms has constructed, or is in
21 the process of constructing, the new broiler houses authorized by the ATC permits that modify
22 the existing facilities, which are stationary sources within the meaning of the Clean Air Act and
23 Rule 2201.

24  54.  "Begin actual construction" includes, but is not limited to, "installation of building
25 supports and foundations, laying of underground pipework, and construction of permanent
26 storage structures."  40 C.F.R. § (a)(1)(xv).

27                    **FIRST CAUSE OF ACTION**
28        **VIOLATIONS OF THE CALIFORNIA STATE IMPLEMENTATION PLAN**

**FAILURE TO COMPLY WITH OFFSETS REQUIREMENTS**

**(42 U.S.C. § 7604(a)(1))**

55. Plaintiff AIR realleges and incorporates by reference paragraphs 1-54.

56. Foster Farms and the District have violated and continue to violate Rule 2201, approved as part of the California State Implementation Plan. *See* 40 C.F.R. § 52.220(c)(311)(i)(B)(1), 52.220(c)(199)(i)(D)(6); Rule 2201 (December 19, 2002 version).

57. Rule 2201 is an emissions standard or limitation as defined in §§ 304(f)(1), 304(f)(4), and 302(k) of the Clean Air Act, 42 U.S.C. §§ 7604(f)(1), 7604(f)(4), and 7602(k).

58. Rule 2201 requires a new or modified stationary source of pollution to purchase "offsets" or "emission reduction credits" for VOC when the post-project Stationary Source Potential to Emit exceeds 10 tons per year. Rule 2201, § 4.5. Similarly, Rule 2201 also requires a new or modified stationary source of pollution to purchase offsets for PM10 when the post-project Stationary Source Potential to Emit exceeds 14.6 tons per year. EPA approved Rule 2201 as part of the State Implementation Plan. 69 Fed. Reg. 27837 (May 17, 2004); 40 C.F.R. § 52.220(c)(199)(i)(D)(6).

59. El Dorado Ranch and Davis Ranch are stationary sources as defined by § 3.36 of Rule 2201:

> Any building, structure, facility, or installation which emits or may emit any affected pollutant directly or as a fugitive emission. Building, structure, facility, or installation includes all pollutant emitting activities including emission units which:
>
> 3.36.1 Are under the same or common ownership or operation, or which are owned or operated by entities which are under common control;
>
> 3.36.2 Belong to the same industrial grouping either by virtue of falling within the same two-digit standard industrial classification code or by virtue of being part of a common industrial process, manufacturing process, or connected process involving a common raw material; and
>
> 3.36.3 Are located on one or more contiguous or adjacent properties.

At each ranch, the collection of broiler houses and other emission units are collectively a stationary source.

60. Based on information and belief, including information in the public record, Foster

COMPLAINT - AIR v. FOSTER FARMS                11

1 Farms has violated and continues to violate section 4.5 of Rule 2201 by not purchasing emission
2 reduction credits for VOC emissions from El Dorado Ranch because the post-project Stationary
3 Source Potential to Emit VOC exceeds ten tons per year.

4      61. Based on information and belief, including information in the public record, Foster
5 Farms has violated and continues to violate section 4.5 of Rule 2201 by not purchasing emission
6 reduction credits for VOC emissions from Davis Ranch because the post-project Stationary
7 Source Potential to Emit VOC exceeds ten tons per year.

8      62. Based on information and belief, including information in the public record, Foster
9 Farms has violated and continues to violate section 4.5 of Rule 2201 by not purchasing emission
10 reduction credits for PM10 emissions from El Dorado Ranch because the post-project Stationary
11 Source Potential to Emit PM10 exceeds 14.6 tons per year.

12      63. Based on information and belief, including information in the public record, the
13 District has violated and continues to violate section 4.5 of Rule 2201 by not requiring the
14 purchase of emission reduction credits for VOC emissions from El Dorado Ranch because the
15 post-project Stationary Source Potential to Emit VOC exceeds ten tons per year.

16      64. Based on information and belief, including information in the public record, the
17 District has violated and continues to violate section 4.5 of Rule 2201 by not requiring the
18 purchase of emission reduction credits for VOC emissions from Davis Ranch because the post-
19 project Stationary Source Potential to Emit VOC exceeds ten tons per year.

20      65. Based on information and belief, including information in the public record, the
21 District has violated and continues to violate section 4.5 of Rule 2201 by not requiring the
22 purchase of emission reduction credits for PM10 emissions from El Dorado Ranch because the
23 post-project Stationary Source Potential to Emit PM10 exceeds 14.6 tons per year.

24      66. Foster Farms and the District's violations of Rule 2201 are violations of an
25 emission standard or limitation, within the meaning of the Clean Air Act, are on-going and will
26 continue unless remedied by an order from the Court.

27                                **SECOND CAUSE OF ACTION**
28              **VIOLATIONS OF THE CALIFORNIA STATE IMPLEMENTATION PLAN**

**FAILURE TO COMPLY WITH BACT REQUIREMENTS**

**(42 U.S.C. § 7604(a)(1))**

67. Plaintiff AIR realleges and incorporates by reference paragraphs 1-66.

68. Rule 2201 requires a new or modified stationary source of air pollution or an emission unit to install Best Available Control Technology when emissions of VOC or PM10 exceed 2 pounds per day. Rule 2201 § 4.1.

69. Each of the mechanically ventilated broiler houses at El Dorado Ranch and Davis Ranch is an emission unit as defined by § 3.16 of Rule 2201.

70. The District improperly relied on its current cost effectiveness threshold, determined to be inadequate by CARB, for BACT determinations in the El Dorado Ranch and Davis Ranch ATC permits. Thus, the District violated and continues to violate the BACT requirement in Rule 2201 for El Dorado Ranch and Davis Ranch and is in violation of Rule 2201 and the Clean Air Act, 42 U.S.C. § 7604(a)(1).

71. The District's violations of Rule 2201 are violations of an emission standard or limitation, within the meaning of the Clean Air Act, are on-going and will continue unless remedied by an order from the Court.

**PRAYER FOR RELIEF**

WHEREFORE, AIR respectfully requests that the Court grant the following relief:

A. Issue an order declaring that the District is in violation of the State Implementation Plan for failing to require Foster Farms to purchase offsets as required by Rule 2201.

B. Issue an order declaring that Foster Farms is in violation of the State Implementation Plan for failing to purchase offsets for El Dorado Ranch and Davis Ranch as required by Rule 2201.

C. Issue an order declaring that the District is in violation of the State Implementation Plan for issuing ATC permits to Foster Farms that do not comply with the BACT requirements of Rule 2201.

D. Issue a preliminary and permanent injunction directing Foster Farms to stop all

|    |    |    |
|---|---|---|
| 1  |    | construction and/or operational activity until Foster Farms has complied with all |
| 2  |    | applicable requirements of the Clean Air Act and Rule 2201. |
| 3  | E. | Assess a civil penalty against Foster Farms of up to $32,500 per day per violation |
| 4  |    | for each day since Foster Farms began actual construction on or about May 30, |
| 5  |    | 2006; |
| 6  | F. | Assess a civil penalty against the District of up to $32,500 per day per violation |
| 7  |    | for each day since Foster Farms began actual construction on or about May 30, |
| 8  |    | 2006; |
| 9  | G. | Order the District and Foster Farms to take other appropriate actions to remedy, |
| 10 |    | mitigate, or offset the harm to public health and the environment caused by the |
| 11 |    | violations of the Act and Rules alleged above; |
| 12 | H. | Retain jurisdiction over this matter until the District and Foster Farms have |
| 13 |    | complied with the orders of this Court; |
| 14 | I. | Award AIR its costs of litigation, including reasonable attorney and expert |
| 15 |    | witness fees, pursuant to § 304(d) of the Act, 42 U.S.C. § 7604(d); and |
| 16 | J. | Provide such additional relief as the Court deems just and proper. |

Dated: November 15, 2006                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　CENTER ON RACE, POVERTY & THE
　　　　　　　　　　　　　　　　　　　　　　　　　　ENVIRONMENT


　　　　　　　　　　　　　　　　　　　　　　　/s/ Avinash Kar
　　　　　　　　　　　　　　　　　　　　　　　Avinash Kar
　　　　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiff
　　　　　　　　　　　　　　　　　　　　　　　Association of Irritated Residents

COMPLAINT - AIR v. FOSTER FARMS                    14